today on Oral Argument. We begin with Seals v. Vannoy. Ms. Cappell? If I mispronounced that, please correct me. If I mispronounced your name, please correct me. Good morning. May it please the court. My name is Cecilia Cappell and I represent the petitioner in this case, Mr. Glenn Seals. I'd like to address three points today. One, the prima facie issue under Batson is a mixed question of fact and law. Two, the 2254E1 presumption of correctness for state court factual findings cannot be applied to bar relief where the state court's decision is unreasonable under section 2254D. Three, the state court's decision in this case was unreasonable under section 2254D because it found no prima facie case based on judge-supplied reasons that were never alleged by the trial prosecutors. Starting with the issue of whether the decision at the prima facie case level is a mixed question or a purely factual one, this court's jurisprudence on the subject defines a mixed question as one that requires the trial court to determine the appropriate legal standard and apply that standard to the facts. The U.S. Supreme Court just last term in Guerrero-Las Gorillas v. Barr defined a mixed question as one that has both factual and legal elements. The question of whether a prima facie case has been raised under Batson has both factual and legal elements and it requires the application of a legal standard. The factual elements include a pattern of strikes, discriminatory questioning and statements, the nature of the crime, any other relevant circumstance. The legal aspect is the standard that the determination has been raised. It is a low burden. It is less than a preponderance of the evidence and this burden is designed to be low because it needs to generate actual answers to the questions and inferences that have been raised. And so it's our position that the district court erred here in considering the prima facie issue to be a purely factual question. But in any event, section E1 of 2254 should not have barred review because it is the decision of the state court that this court reviews under AEDPA and not the individual factual findings. So ultimately, when a court is considering a decision that was adjudicated on the merits in state court, there is a bar on relief under section 2254D that may be overcome with the showing that the state court's decision was contrary to statute or it contained an unreasonable application of clearly established federal law or it was based on . . . On the question that you just addressed a minute ago, excuse me for interrupting you, what do you do with the Soria case? I thought it said that prima facie or the Batson was purely a factual question. Yes, Your Honor. I understand this court's decision in Soria. I think that my answer would be first, it was decided in 2000, which was before Johnson v. California. At that point, the prima facie stage determination was a little bit more ambiguous. And in Johnson v. California, the court said, no, this is the specific standard that the court has to apply. And so the standard got a lot more defined as of Johnson v. California in 2005. However, if this court is inclined to continue to follow Soria, then even if this is a purely factual determination, the decision itself is reviewed under Section 2254D. And I think the parties here agree that Section 2254E1, which enacts this presumption of correctness for factual findings that has to be overcome with clear and convincing evidence, that applies to these discrete findings of historical fact. The decision comes under 2254D. And I would say that Miller L. v. Cockrell held that AEDPA does not require a petitioner to overcome this presumption of correctness by clear and convincing evidence as to the decision on the merits. And in Miller L., the Supreme Court was reversing this court because this court applied too high of a burden as to the rebuttal of the presumption of correctness. The court reviews decisions under Section 2254D. And this court has applied 2254D in a two-phase stage issue in Price v. King and also in stage three issues in cases such as Hayes v. Thaler and Reed v. Quarterman. So the prima facie determination is based on findings of fact. And those findings of fact under this court's jurisprudence may be viewed under Section 2254E1. But the decision itself is viewed under 2254D. So an example would be the trial court denies a prima facie case and says I'm denying the prima facie case because the state's only struck three African-American jurors. Now, the petitioner has the burden of showing actually it was five African-American jurors that were struck. And that makes the decision unreasonable under Section 2254D. Another example would be the trial court says I'm denying a prima facie case because the defendant's white. Now, we know that that's contrary to clearly established federal law. And so even though it is a factual issue, the decision itself is contrary to clearly established federal law under Section D1. So the court considers the reasonableness of the decision of the state court as the ultimate question here. And in this case, the district court erred in treating the prima facie determination of fact that was subject to the presumption of correctness under 2254E1. The decision of the district court here found that the state's court decisions collapsed that three steps into one. And in so doing that, it was a violation of clearly established federal law. But then the court applied the presumption of correctness to that decision on the merits under Section E1 and required Mr. Seals to rebut that with clear and convincing evidence, which the court found that Mr. Seals could not do. This was error. The review here should have been de novo. The Supreme Court recently made clear in Wilson v. Sellers that the job of the federal habeas court is to review those specific reasons that were stated by the state courts and defer to those reasons if they're reasonable. But in this case, the last reason decision on the prima facie issue was based on judge-supplied reasons rather than the prosecutor's actual reasons. The district court in this case acknowledged that this goes against Batson's clear three-step process. But then the district court goes on to consider these alternate factual reasons that might have supported a denial of a prima facie case. The court considered the fact that the state had unexhausted peremptory challenges. That was not considered by the state courts, and that's because the state trial judge cut off the peremptory strikes prematurely, and so neither party was able to use all of their peremptory challenges. The district court— Are you saying correctly that with respect to at least some of these jurors that the state struck, there were previous for-cause proceedings? That's correct, Your Honor. So is it correct to say that the judge completely made up these reasons, or was the judge simply relying on the state's previous contentions? It is not my position that the trial court is making up anything, but it is our position that Johnson v. California clearly established that the trial judge at the prima facie stage does not consider reasons that possibly could have underlied these strikes by the prosecution. That's only at step two. I think— But is that this case? In other words, there's a situation where a court just completely fictionalizes a justification and imputes it to the state. Is that this case, or is this a case where the judge has already heard from the state at a prior stage of the proceedings and is simply assuming the state continues to have that reason? Your Honor, two points. One is that in Johnson v. California, this exact scenario happened. This was a cross-racial crime. This involved a situation where the state had used peremptory challenges to strike three African-American jurors that it previously unsuccessfully attempted to strike for cause. And the trial court in Johnson said, I'm denying a prima facie case because I know why the state's striking these jurors because they already gave me the reasons during the cause challenges. The U.S. Supreme Court reversed. The U.S. Supreme Court said in doing that, the court applied too high of a standard at the prima facie stage. And the court noted that— Counsel, isn't there a difference between the trial judge saying, I'm denying Batson Step 1 because I already know the prosecution's reasons, and on the other hand, a trial court saying, I'm denying a finding of Batson Step 1 prima facie case because I have been here observing jury selection and the same reasons that the prosecution said they were giving when they were trying to strike for cause are reasons that I have already observed myself that I can factor into my holistic assessment of all the circumstances. And I find that that reason, along with everything else that I've observed, don't rise to the level of a prima facie inference. Aren't those different? One is the judge making a factual determination, and the other is the judge speculating about what the prosecutor's reasons might have been. Your Honor, I think that in either situation, that would violate Johnson v. California. Johnson and Batson say that the court considers all relevant circumstances in considering whether a prima facie case has been made. If we start considering reasons that the state might have used to strike an African-American juror, we're putting the cart before the horse. It's only at Step 2 and Step 3 that we're considering the actual reasons that the prosecutor sets forth for each strike. But doesn't the Supreme Court's opinion in Flowers say that one consideration in making the Step 1 prima facie determination is a comparison of prospective jurors who were struck and prospective jurors who were not struck? Yes, Your Honor, and I think that goes to the pattern of strikes. I think that goes into who the state was accepting, who the state was striking. It doesn't go to the reasons that possibly could have supported the strikes. And Johnson said, even if the state might have had good reasons for the strikes, that doesn't matter. What matters is the real reasons, and it doesn't matter until we get to Stage 2 and 3. And the thing is, the state wants to have it both ways. Excuse me for interrupting. I'm having trouble hearing you, but it's not your fault. Could you take that microphone and bend it around so that it's in front of the lamp? See if that makes a difference. Okay. Is that better? I think that's maybe a little bit better. Sorry, Your Honor. No, it's not your fault at all. We've been ingesting the audio all week to try to compensate for the plexiglass, but try to get that as close to you as you can. Sorry for the interruption. Please continue. No problem. The point I was making was the state might have had great reasons for the strikes, but we don't get into that until we get to Step 2 and 3. And the state wants to have it both ways by having reasons that support the strikes on the record without having those reasons subject to the scrutiny that they would be under in a Step 2 and 3 situation under Miller L. in the court's case law. We have to look at the white jurors and the black jurors and compare them and consider whether the prosecutor is credible and the reasons are pretext. We don't get into any of that at Step 1. We're just looking at the circumstances that may give rise to inference of discrimination. In this case, there was an inference raised. And I would also point this court to the U.S. Supreme Court's decision in Williams v. Louisiana. This was a GBR, but there was a concurring opinion by Justice Ginsburg stating that But, counsel, by judge-supplied reasons, wasn't the court there referring to judge-supplied reasons why the prosecution acted as it did? And maybe that's in a separate category than the judge's own observations as part of his or her holistic assessment of whether the circumstances even give rise to a reasonable inference. Couldn't you distinguish conceptually between supplying reasons why another person acted and the judge's own holistic assessment of all the circumstances? Well, Your Honor, in Williams v. Louisiana, that's what the court did. The court said, I'm considering there are reasons that are apparent to this court that would have supported the strikes, and I'm considering those in all relevant circumstances under Batson. And the court cited two seals, the decision in this case in the Fifth Circuit Court of Appeal. But the Louisiana Supreme Court reversed. The Louisiana Supreme Court said the judge cannot consider these reasons that were not stated specifically by the prosecutors, whether it's Stage 1, Stage 2, or Stage 3. And the Louisiana Supreme Court reversed and sent it back. And so under the very low burden that Johnson sets forth for a prima facie case, an inference of discrimination was established here. This was a cross-racial crime like Johnson, and it involved an African-American man accused of killing a white victim with his own gun. There was a pattern. At the time the Batson challenge was made, the state had accepted 5 out of 6 and then 6 out of 7 white jurors, but it had used 3 out of 4 for M3 strikes to remove African-American jurors. Ultimately, it accepted 11 out of 13 white jurors, but it used 5 of its 7 for M3 challenges on African-American jurors. This case involved racial undertones. It involved the state's argument that Mr. Seals was a thug from New Orleans coming into Jefferson Parish to commit murder. There was a well-documented history of race discrimination in this district attorney's office, including Snyder v. Louisiana, which came out less than a year before the trial in this case. There was a study done on the strikes of African-American jurors by the prosecutors in this office, and there was also State v. Harris that had come out before the trial in this case, and so all of this information should have been taken into account. And under the very low burden, this is less than a preponderance of the evidence, there was an inference of discrimination here. And so we're asking that this court reverse the ruling of the district judge, if the district judge's ruling was clearly erroneous on the law, and grant the writ of habeas corpus. Unless there are further questions, I'll reserve the balance of my time. Yes, you should. Thank you. Ms. Long? May it please the court— You may remove your mask if you'd like. My apologies, Your Honor. May it please the court, Andrea Long, Assistant District Attorney, appearing on behalf of the affilee, Warden Daryl Vinoy. As the court is aware from briefing, there are a number of points of disagreement between the parties. However, the crux of the issue is that Mr. Seals is not entitled to federal habeas relief based on two primary points. Number one, he failed to establish a prima facie case of discrimination under BATSA. Number two, he is barred from relief based upon AEDPA and the litigation bar that is applicable. Turning first to the issue of the prima facie case, the Supreme Court has explained that a prima facie case may be made out by a defendant by offering a wide variety of evidence so long as the sum of the proffered facts gives rise to an inference of discrimination. And such simply did not occur here. You acknowledge that our court has described this as a light burden? I'm sorry, Your Honor, I could not hear you. You acknowledge, I assume, that our court has described Step 1 as a light burden? Yes, Your Honor. But it is still a burden. To be sure, so do I understand correctly that the racial composition of the entire jury pool was essentially three to white, in terms of whites and African Americans? The statistics have been somewhat unclear, and for all intents and purposes, it appears that the courts and the parties have accepted the representations of the defendant as to the numbers for purposes of an assuming without conceding, because we simply cannot be sure based on the lack of record evidence. But the defendant's, excuse me, Mr. Seale's position is that the veneer was comprised of 22% black individuals, and I believe that that number is derived from a footnote in one of the filings where 500 summons had gone out, 112 directed towards black prospective jurors. So let us presume then, based on what limited information is available, that the pool from which you all drew and struck was substantially white. By contrast, of all these strikes that the state used, it was five to two in the other direction. Why is that not enough to satisfy a light verdict? Because it is not a single factor that goes into the consideration, Your Honor. It's the totality of the circumstances, and the totality of the circumstances in this case involves a lot of different considerations. First and foremost, the first strike in this case involved, as Mariah Henry, a lady who had been challenged for cause because she had indicated that her religion essentially precluded her from judging. The second strike at issue was that of Byron Davis, and the third was Mr. Edmund Bokaj. And there was confusion as to Mr. Bokaj's identity with the trial court and the prosecutor assuming that he was white and the defense indicating that Mr. Bokaj was black based on information that only the defendant possessed. So while the prosecutor at that point had used three or four strikes against black prospective jurors, the prosecutor and the defense had seated three white jurors and two black jurors at that point. And I would ask the court to keep in mind that the prosecutor does not control the order in which the jurors are presented. There is no jury shuffling or anything like that. And the prosecutor cannot simply strike white prospective jurors for the sole reason of making the numbers look a little more balanced at a particular point in the proceeding, because that in and of itself would be discriminatory in nature. So after the first batch and challenge, Your Honor, the jury selection proceeded until there was a second challenge. Ms. Sabrina Lewis. Ms. Lewis had indicated that two stories automatically equaled reasonable doubt. And like Ms. Henry, Ms. Lewis had been the subject of an unsuccessful challenge for cause. When Ms. Lewis was not challenged, the challenge for cause was not granted, the state exercised a peremptory, and the defense objected, saying the state had now used four out of six challenges to strike black prospective jurors. But at that point, an additional three white jurors, two black jurors, and one Hispanic juror had been accepted, raising the total significantly to ensure that the judge could see that there was no actual pattern to the strikes. And the judge also acknowledged that he had almost granted the challenge for cause as to Ms. Lewis. Which is simply recognition of a historical fact that had already occurred, and was not the judge supplying a reason, but merely acknowledging something that had already happened in the course of Wadir. What do you make of opposing counsel's position that that specific procedural fact pattern is specifically foreclosed by, I think it's Johnson? I disagree for a number of reasons, Your Honor. First and foremost, the statement, first of all, I do not consider Johnson to be clearly established law for the point. Johnson addressed what the Supreme Court itself described as a narrow but important point. And that narrow but important point was whether California's more likely than not standard comported with Batson's first step. And the court found that it did not. It did not presume to prescribe any particular factor under Batson's first step. It did not alter in any way Batson's all relevant circumstances test. Nothing changed about the totality of the circumstances still being considered at stage one. And I would also point out, Your Honor, that I think what I heard opposing counsel say is that the rule in Johnson is that at step one, you simply do not consider what the state's race-neutral reasons might have been. And it seems to me that that's her point, that that's exactly what happened here. Can you respond to that? Well, I think her reliance on Johnson is misplaced, Your Honor, especially because Johnson, while there's a small passage that's taken from the California Supreme Court opinion, suggests that there had been challenges for cause. When you look back into the California Supreme Court opinion, it's apparent that the judge, the trial judge, was speaking in conditional hypotheticals, saying, I would not have granted this for cause. In other words, had a challenge for cause been made, I would not have found this sufficient. So this takes it outside of the realm. So you're saying in Johnson, there were no relevant for cause proceedings? That is what the lower court, I'm sorry, the state court cases suggest. While it could be clear, there's no mention of an actual denial for challenge for cause, just conditional language that is discussed by the trial judge indicating that she did not believe it would have risen to the level of challenge. So the point is, in Johnson, the court literally did not know what the state might have said to judge. Whereas here, you're saying you did know, you, the state, did know because, I'm sorry, the court did know because the state had previously attempted to remove for cause. For three out of five of those strikes, yes, you're right. No, you're right, okay. And I would also point out that by the time that the third Batson challenge was lodged, that it pertained to Mr. Christopher Williams. Mr. Williams was ineligible to serve as a juror under Louisiana law. He was an unpardoned convicted felon and the trial court erred in refusing to excuse Mr. Williams for cause. And notably, at the time, there was a debate going on about the challenge for cause. The defense actually said, there's a peremptory there, but not a challenge for cause. And several other factors are relevant at this point, Your Honor, including the fact that at this stage, one additional black juror and one additional black alternate juror had been selected. The alternates made up... I'm sorry, black prospective jurors were actually seated as both alternate jurors. So the final composition of the jury in this case was six white jurors, five black jurors, one Hispanic juror, and two black alternate jurors. So while the veneer made up 22%, the actual percentage of black jurors seated was 42%, and 50% if you include the alternates. And the state at this point had unexhausted peremptory challenges. And counsel suggested that this should not be considered because the state was caught off guard. But my colleague fails to appreciate the record, right at the point where the backstriking issue arose. And at that point, when 12 jurors had been selected, the judge said, that's our jury, and the prosecutor agreed, that's the jury. The state concurred with the trial court in its position. Granted, it was an erroneous position at that point, under 799.1, but nevertheless, the state was not surprised. The state had not intended to backstrike. The state was perfectly satisfied with the representative and diverse jury that had been selected. And it's important to note that this is contrary to the position the defendant has taken in the past, where the state was accused of being complicit in the denial of the backstrikes. So to say that the state would have exhausted more peremptory challenges by backstriking is simply without record support, and actually refuted by the record. Your Honor, I would also point out that the diverse composition of the jury contrary to what has been represented in Mr. Seale's brief is a relevant factor. And even if the court were to say, well, we can't necessarily tell at a particular point, so we're not going to give as much weight to that fact, I would still point out that the renewed Batson challenge was at a time when the entire 12-person jury had been seated, and one alternate had been seated. So those numbers are substantially significant in and of themselves. And I would also like to address with the court's indulgence the comment that the Williams case should be given any type of weight on this particular issue of apparent reasons. The apparent reasons did not come into play in Williams at step one. The Williams case, as the concurrence in the GR indicates, involved an old law of Louisiana that said that if an inference of discrimination has been made, the judge may ask for reasons unless those reasons are apparent in the record. So under 795C in the Williams case, the inference of discrimination has already been made. That is clearly distinguishable from what occurred in this matter, where there was no inference of discriminatory purpose established. There's no prima facie case established. And when the Williams case came back to state court, Louisiana Supreme Court decided that the record was just so beyond salvaging in order to walk through the steps properly that they remanded it for an evidentiary hearing. And quite frankly, what a state court does is really irrelevant to what this court does. This court follows clearly established law, and neither Johnson nor Williams constitute clearly established law for the proposition cited by Mr. Seals. Not to interrupt your point, but just to make sure I'm understanding your position correctly, you think it is permissible for a trial judge at Batson step one to make a comparison of whether the prosecution is treating similarly situated Vannara members in a similar fashion? So you do think it's permissible for a trial judge to look at whether there might be four people who gave, during the introductory questionnaire, maybe gave the same religious belief about being able to sit in judgment of others? Let's imagine four potential jurors gave that reason and professed that religious belief. It would be permissible, in your view, correct, for a trial judge to examine whether the prosecutor was trying to strike one but not all of those people and the race of the people that the prosecutor was trying to strike or not strike. That's permissible at Batson step one, correct? According to Batson, Your Honor, Batson says that a trial court should take into account all relevant circumstances and, in fact, has expressed confidence that a trial judge experienced in supervising voir dire can decide whether or not the circumstances concerning the prosecutor's exercise of peremptory challenges gives rise to a prima facie case. So a great deal of confidence is vested and that includes being able to appreciate the subtleties and the nuances that may not be apparent based on a cold record. So if the trial judge can consider the answers given by potential jurors during their questioning before strikes are exercised as a matter of comparing whether similarly situated potential jurors are being treated similarly, is there any reason a trial judge could not consider potential jurors' answers in deciding whether an individual who was struck is even similarly situated to other potential jurors as to require that level of scrutiny? Can a trial judge consider a potential juror's answers even if the defense is not claiming the potential juror was similarly situated to other potential jurors? Batson is a very flexible standard, Your Honor. So my answer would be, according to Batson, yes, there are no restrictions, per se, on what a trial court may consider. Batson's standard was designed to establish a flexible framework that would allow the states to implement the various procedures. And there is nothing in that framework that says anything other than the standard, which is essentially the inference of discriminatory purpose. And I would also point out, Your Honor, that one of the factors that was given as an example in Batson was questions and statements made by prosecutors during voir dire examination and in exercising challenges, and that those factors may support or refute an inference of discrimination. So Batson has not purported to establish specific guidelines for a court to consider in evaluating whether or not an inference of discriminatory purpose has been established, and that's by necessity because each case may necessarily have one particular factor that is different from the others. You have about three minutes left. Do you want to take an opportunity to respond to the suggestion that there's a history of use of race in the office? Yes, Your Honor, thank you, I would. The cases to which my colleague refers were cases that were tried in the mid-'90s under a different district attorney's administration and involving different prosecutors. And to attempt to impute, well, first of all, no single case is ever acceptable, but to call two cases a history of discrimination just simply does not bear out. And one of the documents that counsel referred to was not accepted into the record and had to be proffered. So that document purportedly supporting a history of discrimination is not actually in the record. So... Are you referring to that report about the statistical... 1994 to 2003, is that what you're talking about? I believe we are speaking of the same thing, Your Honor. It was offered as an exhibit to the motion for a new trial, and the judge did not allow that to be admitted into evidence. So essentially what we have... Is your position that it's irrelevant or that we actually cannot consider it because it's not... Both, Your Honor. Understand that it's not part of the record, your point on that. Why is it irrelevant? Because... I would have to go outside of the record. I'm sorry, Your Honor, to explain that. But essentially the manner in which the data was compiled has been disputed, and that is part of the reason why it was not accepted into evidence for the motion for a new trial. And I'm sorry, Your Honor, I see that my time is winding down. I would just like to reassert that SORIA is the law of this circuit. And applying SORIA, the defendant has not been able to rebut the presumption of correctness that attached to the lack of a prima facie case. Further, he has not been able to establish the state court decision was unreasonable. To do so, he would essentially have to establish that state court ruling was so lacking in justification that it was error beyond any possibility for fair-minded disagreement, which he simply cannot do. He may be able to show a flaw, error. He may even be able to establish clear error. But what he cannot do and what he has failed to do is establish objective unreasonableness. So whatever standard this court chooses to apply, and the state does submit that E-1 and D are applicable, the defendant is not entitled to relief. And I would thank the court for its time and request that it affirm the district court's denial of habeas relief. All right. Thank you, Ms. Long. Ms. Koppel, you sit down for a vote. I'm going to spend a few minutes talking about the state court's decision in this case, the last reason decision under Eales v. Minomenko. We talked a lot about the trial court's ruling today, but in the last reason decision in this case, the state court of appeals took the reasons that were stated by the trial court, which was the two cause challenges, and supplemented that with all these other reasons that the court found in the record and in the state's brief, and none of these were stated by the trial prosecutors. And there was the confusion between Juror Davis and Juror Hill that is just the result of not asking the prosecutor to give his actual reasons. When you have a trial court and a court of appeals that are looking for reasons in the record that could have supported the state's strikes, mistakes get made. So the court found that the state could have struck Juror Davis because he didn't trust the police, he believed they would lie on the stand, but instead Juror Scott Hill said those things on the record. And Juror Hill was a white juror, and he ended up on the jury after the state accepted him. The confusion with Juror Bokaj that counsel was referring to, first of all, the state said, oh, we aren't sure if he's white or black. The state also said, we're not sure if defense counsel is white or black. And the last reason decision doesn't even mention any kind of confusion as to Juror Bokaj's race in its decision. In fact, the court's decision says that he expressed concern with missing work, which is very similar to the concern that Juror Brooks had in Snyder v. Louisiana. What about the prospective juror who was a felon? That was one of the reasons that was given by the trial court, Your Honor. But it is our position that you don't consider those reasons until the trial prosecutor says them. And then they're going to be subject to scrutiny under Stage 3. And so if the trial prosecutor says, we struck this juror because he was a felon, that's a race-neutral reason. They passed Step 2. But then at Stage 3, you look at, okay, did they accept any white jurors that were felons? What other— Has the Supreme Court ever said that you have to wait until Step 2, Batson, to look at the state's potential justifications, even when the court already knows what those justifications are because the state has already done a forecast motion? It's my position that that is what Johnson held, Your Honor, and that is what the quoted portion of the California Supreme Court's decision said. And it's not just the facts that were quoted by the U.S. Supreme Court's decision. The U.S. Supreme Court also then spends two paragraphs of its decision talking about why we shouldn't rely on judge-supplied reasons, even if it is reasons that the judge thinks that the prosecutor— Was that actually presented in Johnson? Because I hear opposing counsel saying that's sort of dicta at best and that Johnson didn't actually have that in its case. I'm sorry. Those are the facts of Johnson, and they're applied in the decision, and that's at page 172 of the decision. There's two paragraphs, Your Honor. I see my time is up. Thank you. Thank you, Ms. Capil. Your case is under submission, and we notice that you're appointed counsel, and we wish to thank you for your willingness to take the appointment, and we appreciate the good work you've done on behalf of your client. Next case for today, Weaver v. O'Connor.